No. 25-1780

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

STATE OF NEW YORK; STATE OF WASHINGTON; STATE OF RHODE ISLAND; STATE OF ARIZONA; STATE OF CALIFORNIA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; THE DISTRICT OF COLUMBIA; STATE OF HAWAII; STATE OF ILLINOIS; STATE OF MAINE; STATE OF MARYLAND; THE PEOPLE OF THE STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF OREGON; STATE OF VERMONT; STATE OF WISCONSIN,

*Plaintiffs-Appellees*,

v.

ROBERT F. KENNEDY, JR., in his official capacity as Secretary of the U.S. Department of Health and Human Services; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; SUSAN MONAREZ, in her official capacity as Acting Director, First Assistant to the Director, Principal Deputy Director of the Centers for Disease Control and Prevention; MARTIN MAKARY, in his official capacity as Commissioner of the U.S. Food and Drug Administration; U.S. FOOD & DRUG ADMINISTRATION; ANDREW GRADISON, in his official capacity as Acting Assistant Secretary of the Administration for Children and Families; ADMINISTRATION FOR CHILDREN AND FAMILIES; MARY LAZARE, in her official capacity as Principal Deputy Administrator of the Administration for Community Living; ADMINISTRATION FOR COMMUNITY LIVING; ARTHUR KLEINSCHMIDT, in his official capacity as Principal Deputy Assistant Secretary of the Substance Abuse and Mental Health Services Administration; SUBSTANCE ABUSE AND MENTAL HEALTH SERVICES ADMINISTRATION; CENTERS FOR DISEASE CONTROL AND PREVENTION,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the District of Rhode Island

(cover continued on following page)

# REPLY IN SUPPORT OF EMERGENCY MOTION
# FOR STAY PENDING APPEAL

---

BRETT A. SHUMATE
   *Assistant Attorney General*
ERIC D. MCARTHUR
   *Deputy Assistant Attorney General*
MELISSA N. PATTERSON
STEVEN A. MYERS
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7232*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 305-8648*
   *Steven.A.Myers@usdoj.gov*

---

# INTRODUCTION

When the comparison was helpful to them, plaintiffs readily admitted that this case is functionally indistinguishable from litigation concerning a reduction in force (RIF) at the Department of Education, *New York v. McMahon*, --- F. Supp. 3d ----, 2025 WL 1463009 (D. Mass. May 22, 2025), *stay pending appeal denied*, *Somerville Pub. Schs. v. McMahon*, 139 F.4th 63 (1st Cir. 2025), *stay pending appeal granted*, *McMahon v. New York*, 145 S. Ct. 2643 (2025). *See* Dkt. No. 59, at 1 (noting "analogous factual posture" and "similarities in legal arguments"). The district court agreed, explaining that it "look[ed] to the First Circuit's" decision in *Somerville* because it was "factually similar" and therefore "guide[s] this Court's discussion," Dkt. No. 73, at 24, 27, 51 (D.Ct.Op.).

The Supreme Court has now stayed the *Somerville* injunction. *New York*, 145 S. Ct. 2643. It has also stayed the injunction in *Trump v. AFGE*, 145 S. Ct. 2635 (2025), notwithstanding assertions from respondents in that case that the Department of Health and Human Services' (HHS's) "reorganization has gutted the agency's programs and functions" and harmed "Respondent local governments." Respondents' Response to Stay Application 13-14, *Trump v. AFGE*, No. 24A1174 (U.S. June 9, 2025). But even after the Supreme Court stayed the principal cases upon which it had relied, the district court still refused to stay its injunction, indicating that it would "not interpret the Supreme Court's shadow docket summary orders (issued without any reasoning or explanation) as definitive indications as to how either the

Supreme Court or the First Circuit Court of Appeals might rule on a motion to stay." Dkt. No. 81, at 2.

Days later, the Supreme Court reiterated that its interim orders *do* "squarely control[]" how lower courts should decide motions seeking interim relief because they "inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025). The upshot is that the Supreme Court has swept away any plausible justification for allowing this injunction to remain in effect: it has (1) stayed the *Somerville* injunction; (2) stayed the *AFGE* injunction; and (3) reminded lower courts that they must treat its emergency orders as precedent when presented with motions seeking similar relief. For those reasons—and because the government satisfies the traditional stay factors—this Court should enter a stay pending appeal.

## ARGUMENT

### I. The Supreme Court's Orders In *New York* And *AFGE* Require A Stay.

The Supreme Court has clearly determined that agencies should be able to proceed with their restructuring efforts while litigation proceeds, even in the face of all the legal and equitable arguments that plaintiffs advance here. Those orders "squarely control[]" because they "inform how a court should exercise its equitable discretion in like cases." *Trump v. Boyle*, 145 S. Ct. 2653, 2654 (2025); *accord Gateway City Church v. Newsom*, 141 S. Ct. 1460 (2021) (failure to grant interim relief "erroneous" where "outcome is clearly dictated" by earlier interim order); *National*

*Insts. of Health v. American Pub. Health Ass'n*, --- S. Ct. ----, 2025 WL 2415669, at *4 (Aug. 21, 2025) (Gorsuch, J., concurring in part and dissenting in part) ("even probabilistic holdings" must be heeded given "the promise of our legal system that like cases are treated alike"). That should be the end of the matter, for "unless we wish anarchy to prevail within the federal judicial system, a precedent of [the Supreme] Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Hutto v. Davis*, 454 U.S. 370, 375 (1982) (per curiam).

Plaintiffs observe that the *New York* order "did not provide any reasoning." Opp'n 15. But *Gateway City* indicated that the Ninth Circuit's refusal to grant interim relief was "erroneous," 141 S. Ct. at 1460, because the result was "clearly dictated," *id.*, by an earlier interim decision that was also unreasoned, *see South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716 (2021). Whatever precedential force the Supreme Court's order has as to the *merits*, the answer is indisputable as to the *stay factors*: it "squarely control[s]." *Boyle*, 145 S. Ct. at 2654.[1]

---

[1] Justice Kavanaugh's concurrence in *Labrador v. Poe ex rel. Poe* suggests that the Supreme Court sometimes does not issue emergency opinions to avoid causing "lock-in." 144 S. Ct. 921, 934 (2024) (Kavanaugh, J., concurring); *see* Opp'n 16. The "lock-in" to which he was referring was the possibility that an opinion could "predetermine the case's outcome" and thereby "hamper percolation across other lower courts on the underlying merits question." *Labrador*, 144 S. Ct. at 934 (Kavanaugh, J., concurring). Justice Kavanaugh's point is that the Court might not issue an opinion to avoid prejudging the *merits* of the appeal—not that lower courts may ignore the Supreme Court's interim orders when deciding interim motions.

3

Plaintiffs also suggest that this case is "materially different" from *New York* because it "involves a different federal agency, different statutorily mandated functions, and different harms to the States," Opp'n 16, but they fail to explain why those differences matter. Plaintiffs observe that this injunction "does not require defendants to reinstate any employees" to active duty, Opp'n 17, but as described below that only confirms that the injunction does not even remedy most of plaintiffs' asserted harms. *See infra* p.11.

Finally, plaintiffs argue that *AFGE* "declined to address the legality of any agency RIF or reorganization plan." Opp'n 15. That is true, but the Supreme Court was aware that its stay would enable HHS to move forward with significant portions of the RIFs it had already announced. *See* Respondents' Response to Stay Application 9-10, *Trump v. AFGE*, No. 24A1174 (U.S. June 9, 2025) (warning of "in-progress and imminent massive RIFs" at HHS). Indeed, within a week of the *AFGE* decision, HHS terminated thousands of employees (though not those covered by this injunction). Christina Jewett & Benjamin Mueller, *H.H.S. Finalizes Thousands of Layoffs After Supreme Court Decision*, N.Y. Times (July 15, 2025), https://www.nytimes.com/2025/07/15/us/politics/hhs-layoffs.html. The Supreme Court's order necessarily reflected its judgment that terminations could proceed while litigation continues.

## II. The Government Satisfies The Traditional Stay Factors.

### A. The Government Is Likely To Prevail On The Merits.

#### 1. The District Court Lacked Jurisdiction.

The district court lacked jurisdiction because plaintiffs lack Article III standing and because their claims are precluded by the Civil Service Reform Act (CSRA). Mot. 10-17.

a. With regard to Article III, the states again contend that the challenged actions have harmed their citizens, as by limiting "plaintiffs' ability to monitor and reduce maternal and infant morbidity and mortality in their States." Opp'n 19. Plaintiffs ignore the government's demonstration that any such harms are not cognizable because the states cannot litigate on behalf of their citizens as parens patriae. Mot. 11. Nor do plaintiffs refute the government's demonstration that they fail to allege cognizable informational injury. Mot. 12.

Plaintiffs do briefly address the government's demonstration that the injunction was inappropriately broad because the proper response to the government's asserted failure to perform a required function is to bring a lawsuit to compel that action. Mot. 12-13. In plaintiffs' view, any injunction requiring HHS to perform particular functions "would have been meaningless" because "there are insufficient personnel at the Department" to comply. Opp'n 19-20. If a court ordered HHS to perform particular functions, however, it would be the government's obligation to determine how to comply; if the government failed to do so, district courts have ample means to

5

compel compliance with lawful orders. Plaintiffs' skepticism that the government could comply with a hypothetical order is not a reason to preemptively place HHS into receivership.[2]

**b.** Plaintiffs fail to rebut the government's demonstration that their claims are precluded by the CSRA, which provides the "exclusive means" for challenging federal personnel decisions. *Elgin v. Department of the Treasury*, 567 U.S. 1, 8 (2012). The CSRA permits only affected employees to challenge their terminations (and only before the Merit Systems Protection Board (MSPB)), and the statute should not be read to grant parties excluded from the CSRA greater rights than those who are subject to it. *See National Treasury Emps. Union v. Vought*, --- F.4th ----, 2025 WL 2371608, at *6 n.3 (D.C. Cir. 2025).

Plaintiffs suggest that they "are not raising employment disputes" within the MSPB's expertise, Opp'n 20-21, but that contention is meritless. Plaintiffs challenge RIFs—actions that could be challenged by the affected employees under the CSRA. Mot. 5. That plaintiffs challenge personnel actions on broad grounds does not matter—as confirmed by *Elgin*, where the merits question concerned the constitutionality of a federal statute. 567 U.S. at 7.

---

[2] For similar reasons, any injury concerning grants must be brought under the Tucker Act. Mot. 14. An order requiring the government to pay funds to which plaintiffs are entitled would fully remedy any grant-related injury, which means they lack standing to ask for more.

6

Plaintiffs suggest that "accepting defendants' argument would foreclose all meaningful judicial review over plaintiffs' claims." Opp'n 21. It is correct that the states cannot challenge the termination of federal employees, but their own brief explains why: "[t]he CSRA applies only to employees and unions—not to States." Opp'n 20. Thus, just as an employee lacking CSRA appeal rights cannot challenge his termination in district court (and is thus left without a remedy), *see United States v. Fausto*, 484 U.S. 439 (1988), the states also may not challenge terminations in district court. Plaintiffs suggest that *Fausto* is distinguishable because the "plaintiff there was a federal employee," Opp'n 21, but on that theory Mr. Fausto's claims could have been heard in district court so long as he persuaded someone injured by his termination—his creditors, his wife, etc.—to sue on his behalf. Allowing third parties to bring seriatim challenges to the same personnel action would recreate many of the same problems as universal injunctions, while reviving the "haphazard" "patchwork" the CSRA was enacted to avoid. *Fausto*, 484 U.S. at 444-45; *see* Mot. 16-17.

### 2. Plaintiffs' Claims Fail On The Merits.

a. Plaintiffs suggest that they are challenging final agency action because they challenge the March 27 press release. Opp'n 24. As set out in the government's motion, the press release is not final agency action because it simply describes various RIFs and restructuring, across HHS's components, that the agency was planning to undertake. Mot. 18. To the extent that plaintiffs meant to actually challenge the

7

RIFs, their complaint was deficient. In any case, as set out above the only way to challenge a RIF is through the CSRA.

**b.** The government is highly likely to succeed in demonstrating that its efforts to operate as efficiently as possible were not arbitrary or capricious. Plaintiffs note the district court's statement that "the record is completely devoid of any evidence" that defendants considered the relevant factors, Opp'n 24 (quoting D.Ct.Op. 40), but this case was decided in a preliminary-injunction posture, before any administrative record was filed. The court's assumption that plaintiffs would eventually prevail on summary judgment is irreconcilable with the appropriate standard of review, as in the personnel context courts are "quite wrong" to "routinely apply[] … traditional standards governing more orthodox" requests for relief. *Sampson v. Murray*, 415 U.S. 61, 83-84 (1974).

**c.** Plaintiffs fail to rehabilitate the district court's belief that defendants' actions are contrary to law. At most, plaintiffs suggest that the RIFs are a cause of *other*, downstream legal violations. *See* Opp'n 26 ("Because of the reorganization and mass terminations under the Directive, the Department is no longer complying with its obligations under numerous federal statutes."). Even if that were correct, it would not mean that the RIFs themselves are unlawful; it might just mean that plaintiffs could challenge any consequent failures to comply with specific statutory obligations.

In any case, plaintiffs' examples of purported statutory violations do not withstand scrutiny. Plaintiffs suggest that the "National Center on Birth Defects and

Developmental Disabilities is not performing statutorily mandated work relating to the early detection and diagnosis of newborn and infant hearing loss," Opp'n 26 (citing 42 U.S.C. § 247b-4a), but they fail to identify a statutory requirement to enter cooperative agreements with particular parties on particular timeframes. They suggest that the National Institute for Occupational Safety and Health "is not performing statutorily mandated research into mine safety and health," *id.*, but the cited provisions simply identify various functions that the Institute "shall have the authority" to perform, 29 U.S.C. § 671(h)(3), and plaintiffs identify no specific research that the Institute is required, as opposed to authorized, to conduct, *see id.* (Institute "shall have the authority"); 30 U.S.C. § 937(b) (Secretary shall "initiate research" and "is authorized" regarding specified types of research); *id.* § 951(a) (directing Secretary to conduct research "as appropriate"). And plaintiffs suggest that the "Center for Tobacco Products is not performing statutorily mandated work related to the regulation of tobacco products," Opp'n 27, but they fail to identify any specific statutory provisions that the Center is violating. A failure-to-act claim requires the plaintiff to identify a "*discrete* agency action that [the agency] is *required to take*," *Norton v. Southern Utah Wilderness All.*, 542 U.S. 55, 64 (2004), and plaintiffs do not come close.

Plaintiffs also suggest that it is contrary to law for HHS to fail to spend every dollar appropriated by Congress. Opp'n 27. But the lump-sum appropriations to which plaintiffs point do not require HHS to spend any particular amount on salaries,

9

and an agency's allocation of funds within a lump-sum appropriation is generally not reviewable. *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993). Beyond that, there is no constitutional requirement that the Executive Branch expend all funds that Congress appropriates; the Appropriations Clause is a negative constraint, not an affirmative command. *Cincinnati Soap Co. v. United States*, 301 U.S. 308, 321 (1937). And to the extent that plaintiffs' fleeting citation to *Rhode Island v. Trump*, --- F. Supp. 3d ----, 2025 WL 1303868, at *13-14 (D.R.I. May 6, 2025), is meant to suggest a violation of the Impoundment Control Act, that argument is both inadequately raised and at odds with plaintiffs' inability to enforce that statute through the Administrative Procedure Act. *See Global Health Council v. Trump*, --- F.4th ----, 2025 WL 2326021, at *10-11 (D.C. Cir. Aug. 13, 2025), *petition for reh'g pending*, No. 25-5097 (D.C. Cir.).

### B. The Equities Favor A Stay.

The equities favor a stay. Indeed, plaintiffs acknowledge that the injunction "may have 'some risk of irreparable harm'" to the government. Opp'n 28 (quoting *Somerville Pub. Schs. v. McMahon*, 139 F.4th 63, 76 (1st Cir. 2025)). Those harms are real: they include both an intrusion on the Executive Branch's constitutional authority and a requirement that the government pay salaries it cannot recoup. *See National Insts. of Health*, 2025 WL 2415669, at *1 (loss of money that cannot be recouped is irreparable harm). This Court did not think that such harms justified a stay in *Somerville*, but the Supreme Court did, and that determination "squarely control[s]." *Boyle*, 145 S. Ct. at 2654.

10

On the other hand, plaintiffs highlight harms allegedly suffered as a result of HHS employees not performing particular functions. As set out above, plaintiffs overstate those harms. But even if those harms were real, the district court *denied* plaintiffs' motion to require affected employees to return from administrative leave to active duty. Dkt. No. 89. With respect to these employees, the injunction provides plaintiffs little benefit while requiring the government to continue paying employees doing no work. That is a distinctly inequitable result.

## CONCLUSION

The Court should grant a stay pending appeal.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*
ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MELISSA N. PATTERSON
 /s/ *Steven A. Myers*
STEVEN A. MYERS
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7232*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-8648*
  *Steven.A.Myers@usdoj.gov*

August 2025

# CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing reply complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2596 words. It complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5) and (6) because it has been prepared using Microsoft Word 2016 in proportionally spaced 14-point Garamond typeface.

/s/ *Steven A. Myers*
STEVEN A. MYERS

# CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the First Circuit by using the appellate CM/ECF system. Participants in the case are represented by registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

/s/ *Steven A. Myers*
STEVEN A. MYERS